COPPER & BRASS FABRICATORS COUNCIL, INC., Plaintiff,

v.

DEPT. OF TREASURY, Donald T. Regan, Secy. of the Treasury and Bureau of the Mint, Defendants.

Civ. No. 81–126.

United States District Court, District of Columbia.

Sept. 11, 1981.

Theodore L. Garrett, Arvid E. Roach, III, Covington & Burling, Washington, D. C., for plaintiff.

Rebecca L. Ross, Asst. U.S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This matter is before the court on defendants' motion to dismiss and plaintiff's motion for a preliminary injunction. Jurisdiction is based on 28 U.S.C. § 1331. For the reasons that follow, we conclude that plaintiff lacks standing to bring this suit.

### Facts

Sometime in 1980, the Department of the Treasury announced that it planned to alter the composition of the one-cent coin from 95% copper and 5% zinc [1] to a copper-plated zinc blank containing 2.4% copper and 97.6% zinc. The Treasury Department relied for authority for this change on 31 U.S.C. § 317(b) (1976), which provides,

> Whenever in the judgment of the Secretary of the Treasury such action is necessary to assure an adequate supply of coins to meet national needs, he may prescribe such composition of copper and zinc in the alloy of the one-cent piece as he may deem appropriate. Such one-cent pieces shall have such weight as may be prescribed by the Secretary.

Because of rising copper prices, the Department viewed the change as necessary to prevent hoarding and to ensure an adequate supply of pennies in circulation. On March 31, 1981, the House Subcommittee on Consumer Affairs and Coinage held a hearing on the proposed change.[2] The subcommittee has taken no further action.

---

1. 31 U.S.C. § 317(a) provides, in pertinent part, "The alloy of the 1-cent piece shall be 95 per centum of copper and 5 per centum of zinc. The weight ... of the one-cent piece [shall be] forty-eight grains."

2. *The Proposed Change in the Penny: Hearing Before the Subcommittee on Consumer Affairs and Coinage of the House Committee on Banking, Housing, and Urban Affairs*, 97th Cong., 1st Sess. (1981) (Exhibit 9 to Plaintiff's Motion for Preliminary Injunction).

Plaintiff, a nonprofit "membership corporation" representing 23 domestic fabricators of copper and copper alloy products, filed this action to challenge the proposed change. Plaintiff seeks a declaratory judgment that the Secretary's decision exceeds his statutory authority under § 317(b), and an injunction barring defendants[3] from taking any steps to further the proposed change.

Defendants have moved to dismiss plaintiff's complaint on the grounds that (1) plaintiff lacks standing because (a) it has not alleged injury with the requisite specificity, and (b) plaintiff's members are not within the zone of interests that § 317(b) was intended to protect; and (2) the jurisdictional statutes cited by plaintiff are insufficient to vest this court with subject matter jurisdiction.[4] Plaintiff has filed opposition and has also moved for a preliminary injunction, arguing that it has made the requisite showing under *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921 (D.C.Cir.1958). It is an understatement to say that the matter has been extensively briefed.

### Discussion

■ It is well established that a plaintiff bears the burden of demonstrating that it has standing to sue. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The basis of the constitutional requirement of standing is found in Article III of the Constitution which limits federal court jurisdiction to "cases or controversies." An association such as plaintiff has standing to bring suit

on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). We therefore must first examine whether plaintiff's members, or any one of them,[5] would otherwise have standing to maintain this action.

■ To establish standing, a litigant must meet a two-pronged test, *i. e.*, that defendant's action has caused him "injury in fact, economic or otherwise," and that this injury is to an interest "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).[6] We think that plaintiff's allegations of injury in fact are sufficient to satisfy the first portion of the two-pronged test, *i. e.*, "injury in fact, economic or otherwise." We are guided to this result by *Control Data Corp. v. Baldridge*, 655 F.2d 283 (D.C.Cir.1981). In *Control Data*, firms who supplied services and equipment to the government challenged the imposition of new standards for the equipment. The court found that plaintiffs had alleged injury in fact, since compliance with the new specifications would require plaintiffs to "expend considerable time and effort," and noncompliance would "effectively [preclude] plaintiff[s] from offering

---

3. Defendants are the Department of the Treasury, Treasury Secretary Donald T. Regan, and the Bureau of the Mint.

4. Defendants later abandon this argument in favor of an argument that the Secretary's decision is committed to agency discretion by law and therefore is unreviewable. *See* Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction at 32–35.

5. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975).

6. A third requirement often cited by this circuit is that there be "no 'clear and convincing' indication of a legislative intent to withhold judicial review." *Control Data Corp. v. Baldridge*, 655 F.2d 283, at 288–289 (D.C.Cir.1981), *citing Ballerina Pen Co. v. Kunzig*, 433 F.2d 1204, 1207 (D.C.Cir.1970), *cert. dismissed*, 401 U.S. 950, 91 S.Ct. 1186, 28 L.Ed.2d 234 (1971). In light of our disposition of this case, we find it unnecessary to reach this third criterion. *See Control Data, supra*, at 289.

their products in the government . . . market." *Id.*, at 289.

Plaintiff avers that its members include every company capable of competing to supply the Mint with blanks for the current 95% copper penny and that the change in the coin will cost plaintiff's members $15,-000,000 a year in lost profits. Affidavit of Robert J. Wardell, at ¶¶ 34, 35, 37, and 45. Plaintiff further avers that these members "are *not* able to compete effectively for the supply of plated zinc blanks to the Mint for the manufacture of the new coin," because their plants are not equipped to perform the necessary work, and that for them to enter the zinc fabrication business would require substantial time and expense. *Id.* at ¶¶ 38, 41, 42, and 43 (emphasis in original). Defendants controvert these allegations, *see* Affidavit of Alan J. Goldman, dated May 26, 1981, at ¶ 12, but "[f]or purposes of ruling on a motion to dismiss for want of standing, [we] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[7] *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 135–36 (D.C.Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Thus plaintiff has demonstrated the requisite "personal stake" in this litigation to meet one part of its constitutional burden.

■ Our determination that plaintiff's allegations of injury in fact are sufficient does not end the inquiry, however. We must examine into the presence of any prudential limitation on the exercise of jurisdiction, which has been described in *Association of Data Processing Service Organizations, Inc., supra*, as a "zone of interests"

test. A party will be denied standing if his alleged injury is to an interest that is not arguably within the zone of interests protected by the statute in question, even though injury in fact has been established. *Control Data, supra*, at 293; *Committee for Auto Responsibility v. Solomon*, 603 F.2d 992, 999 n. 22 (D.C.Cir.1979). "[T]he sources pertinent to this examination are the language of the relevant statutory provisions and their legislative history." *Control Data, supra*, at 294. Although the "zone of interests" test is to be broadly applied and even " 'slight' beneficial indicia" will suffice,[8] our review of 31 U.S.C. § 317(b) and its legislative history reveals no evidence of an intent to protect or benefit plaintiff's members.

■ On its face, § 317(b) evidences no concern for the copper industry; to the contrary, the statutory language appears to vest the Secretary with broad discretion to alter the copper-zinc allocation "as he may deem appropriate" when "necessary" "in [his] judgment." Plaintiff vigorously argues, however, that the legislative history of § 317(b) indicates that Congress intended to protect copper fabricators. We are not persuaded. Section 317(b) was enacted in response to rising copper prices in late 1973 and early 1974. The Treasury Department first proposed a statute that would have authorized the Secretary to change the composition of the penny to 96% aluminum when the use of copper became "no longer practicable." This proposal, as S. 2795, was favorably reported out of committee[9] and passed the Senate without debate.[10] In the House, however, the aluminum penny proposal, as H.R. 11841, met with strong opposition from the vending machine industry and from medical experts in the fields of

---

7. Defendants also argue that only four of plaintiff's members have been awarded contracts in the past five years, and that fabrication of copper penny blanks accounted for less than 2% of those companies' business in 1980. Affidavit of Alan J. Goldman, filed April 10, 1981, at ¶¶ 7, 9. This assertion does not alter the result, however, for if the injury is concrete and specific, even a "trifle" will suffice. *United States v. Students Challenging Regulatory*

Agency Procedures, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417, 37 L.Ed.2d 254 (1973).

8. *Control Data, supra*, at 295; *Constructores Civiles de Centroamerica, S.A. v. Hannah*, 459 F.2d 1183, 1189 (D.C.Cir.1972).

9. S.Rep.No. 93–622, 93d Cong., 1st Sess. (1973).

10. 119 Cong. Rec. 41550 (December 14, 1973).

pediatrics and radiology who testified that x-rays would not detect an aluminum penny if swallowed by a child.[11] Accordingly, the House Banking and Currency Committee reported a substitute bill, H.R. 16032, which was enacted and codified as 31 U.S.C. §§ 317(b) and (c).[12] The committee hearings, committee report and floor debate indicate that in enacting § 317(b) Congress was solely concerned with giving the Secretary discretionary authority to ensure an adequate supply of pennies of a composition and weight that would not interfere with the functioning of vending machines and would be detectable if swallowed by children.[13] No concern was voiced for the copper industry.[14] Therefore, we cannot find that plaintiff's interests lie within the zone of interests intended to be protected by 31 U.S.C. § 317(b).

### Conclusion

For the above reasons, we conclude that plaintiff lacks standing to bring this action and, there being "no case or controversy," we lack jurisdiction. Defendants' motion to dismiss therefore is granted. In light of this disposition, we need not consider plaintiff's motions for a preliminary injunction and to compel discovery.

An order consistent with the foregoing has been entered this day.

11. *See generally To Authorize a Change in the Composition of the One-Cent Coin: Hearing Before the Subcommittee on Consumer Affairs of the House Committee on Banking and Currency*, 93d Cong., 2d Sess. (1974 hearing) (Exhibit 2 to Plaintiff's Motion for Preliminary Injunction).

12. Pub.L.No. 93–441, 88 Stat. 1261 (1974). Section 317(c) gave the Secretary authority to change the composition of the penny to "such other metallic composition as he shall determine" if the use of copper became impracticable and if certain procedural prerequisites were met. This section expired on December 31, 1977.

13. Since 31 U.S.C. § 317(b) was enacted for reasons grounded in national monetary interests, it is clear that a private cause of action for the benefit of this plaintiff and its members is not to be implied. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).

14. A letter to the subcommittee chairman from one copper fabricator expressing concern over a potential loss of jobs in the industry was placed in the record without discussion or comment. *See* 1974 Hearing, *supra* note 11, at 123–24.